BENJAMIN SMITH, JR., *v.* ALBERT ONION and JAMES LOVELL.

IN CHANCERY.

This court do not regard an absolute conveyance of property, with a secret clause of defeasance, written or verbal, as a conclusive badge of fraud ; but such conveyance is open to suspicion.

Where a creditor, who has levied his execution upon land thus conveyed, brings a bill to set aside the conveyance as fraudulent, and, upon the coming in of the answers, it appears that the conveyance was in fact intended as a security, and that a bond of defeasance was given back, the regular course is, for the orator to amend his bill, by inserting a prayer, that the conveyance may be treated as a mortgage and he be allowed to redeem.

Where a debtor conveyed, to one who had formerly been his partner, for the purpose of securing to him such partnership balance as might ultimately appear to be due to him, real and personal property to a large amount, by conveyance absolute upon its face, but taking back a deed of defeasance, and the person to whom the conveyance was thus made refused to disclose to

Smith *v.* Onion et al.

the orator, who was an execution creditor of the one who made the conveyance, the amount of his lien upon the property, and it appeared, that the amount of that lien was not in fact ascertained at the time the conveyance was made, although that might probably have been done with considerable accuracy, and the orator had levied his execution upon a portion of the real estate thus conveyed, treating it as the property of the debtor in fee, and then brought this bill, to have the conveyance set aside, or to be allowed to redeem, and it now appeared, that the amount of property conveyed was more than sufficient to pay all the liabilities of the debtor to his partner, even after taking out the estate levied upon by the orator, it was decreed, that the defendants might, at their election, convey to the orator, by suitable deeds, the land levied upon by him, or pay to him the amount due upon his execution, and receive a conveyance from him; and that, in either event, cost should be taxed against the defendants.

APPEAL from the court of chancery. The substance of the bill and answer and the facts found are sufficiently detailed in the opinion of the court. The court of chancery, July Adjourned Term, 1845,—HEBARD, Ch.,—dismissed the bill. Appeal by orator.

*O. P. Chandler* and *L. Adams*, for orator, cited 2 N. H. 148, 389; *Cadogan v. Kennett*, Cowp. 432; 5 S. & R. 278; 3 Vt. 565; 4 Vt. 405; 12 Vt. 199, 699; *Barrett v. Sargeant et al.*, 18 Vt. 365; 14 Vt. 518; 1 Chit. Pract. 438, 498, 561; 15 Vt. 185.

*Tracy & Converse*, for defendants, cited Story's Eq. Pl. 24, 27, 28, 212; *White v. Yaw et al.*, 7 Vt. 357; *Colton v. Ross*, 2 Paige 396; *Thomas v. Warner*, 15 Vt. 110; *Lloyd v. Brewster*, 4 Paige 537.

The opinion of the court was delivered by

DAVIS, J. It appears, that, January 20, 1840, the defendant Onion made two deeds to Lovell of certain real estate in Chester and in Weathersfield, for the consideration stated of eighteen hundred dollars. They were quitclaim deeds, and were duly acknowledged and recorded. At the same time a defeasance was executed by Lovell, binding him to reconvey the premises to Onion on the latter paying his share of certain debts and liabilities growing out of the purchase, manufacture and sale of woolen goods, in which they had been jointly concerned. This defeasance was not registered. At the same time Onion executed a bill of sale to Lovell of a considerable quantity

Smith *v.* Onion et al.

of personal property, valued in the bill at about $450. This sale is absolute on the face of it. The orator's bill charges, that these conveyances were voluntary, without consideration paid, and void, as against existing creditors. There is a receipt given by Lovell for this personal property, and a promise to apply the avails of it in payment and discharge of the same debts and liabilities mentioned in the defeasance above referred to. The bill farther charges, that Onion was greatly indebted to divers persons, and, among the rest, to the orator in a large sum, which was ultimately reduced to judgment.

The defendants answered jointly, that the conveyances of real and personal estate were made solely to secure Lovell for his liabilities growing out of their partnership transactions as aforesaid; and they state, that the amount due from Onion, for his share, was about one thousand dollars. It is also stated in the answer, that Lovell had signed a note with Onion, as surety, on which about $180 was due; and it is stated, that this was comprehended in the security to be provided for. But this, so far, appears to be a mistake; as nothing is mentioned in the bond of defeasance, save the partnership matters.

Considerable testimony was taken on both sides, chiefly bearing upon the question of the *bona fide,* or fraudulent, character of the conveyances. It is unnecessary to detail it at length.

This court do not regard an absolute conveyance, with a secret clause of defeasance, written, or verbal, as a conclusive badge of fraud. Perhaps, when we take into account the many embarrassments in which other creditors are placed in reaching the property of their debtors, thus circumstanced, it would have been better to have adopted the same doctrine understood to prevail in New Hampshire, and perhaps in other states, and pronounce all such conveyances *ipso facto* void, as against creditors. As it is, this court has often declared such conveyances open to suspicion, in the inquiry before the jury whether fraudulent, or not, in fact.

In the present case there are several circumstances, besides the character of the conveyance, which expose it to suspicion. There are others, connected with the time and manner of the conveyance, calculated to mitigate our judgment. Upon the whole we have

come to the conclusion not to pronounce these conveyances absolutely void for fraud.

That it is to be regarded as virtually a mortgage, and of course open to redemption by the orator, in consequence of his levy on a part of the premises, is not disputed by the defendants. They however insist, that the orator's bill is not adapted to this aspect of the case. Although it might doubtless have been more distinctly framed to present the matter as a mortgage, yet it must be borne in mind, that it would be inconsistent with the main view taken, and that the orator had no access, until after answer filed, to the bond for reconveyance, and could not therefore insist on it in his original bill. It might have been, after answer, presented in an alternative form by an amendment; and such course would have been more regular.

There was, it seems, an amendment to the prayer of the bill, looking to a possibility that the conveyance might be regarded as a mortgage.

We see no difficulty in advising such a decree, as will subserve the purposes of justice between these parties. We allow to the orator the right of redemption, and, as the value of the real and personal estate conveyed by Lovell to Onion, according to the valuation of the parties, was double the amount for which the former had a right to claim indemnity, it was therefore inequitable and improper to attempt to lock up from the reach of other creditors such an amount, if not fraudulent.

It is no satisfactory answer to say, as was probably true, that the amount of liabilities was unknown. It was susceptible of ascertainment, and should have been ascertained with at least an approach to accuracy, before such a sweeping appropriation was resorted to. Or if that were impracticable, the conveyances should and could have been made expressly as a security for whatever balance might be found due on settlement, assuming the amount to be unascertained.

The conduct of Lovell, when requested by the orator, about the time he obtained judgment, to disclose the true character of the transaction, and, if in trust, to state the amount of his claims upon it, was wholly inequitable. His referring the orator to Onion for information, which he, as well as Onion, had the means of impart-

ing, was properly regarded as a mere evasion. Indeed, he plainly intimated, that he would impart the desired information when compelled to. The orator was then under the necessity of abandoning his lien upon the land, acquired by the attachment, or taking the course he did; which was, to levy on enough of the land to satisfy the execution, treating the conveyance as fraudulent and Onion as the owner of the fee, as to creditors, instead of an equity of redemption merely.

Under the circumstances, we are of opinion that the remaining property, even deducting the amount of personal property, which was taken and sold on execution by the orator, is amply sufficient to satisfy all the just claims of Lovell;—but whether so, or not, we reverse the decree of the chancellor, and remand the case, with directions to enter a decree that the defendants pay the full balance of the orator's execution against Onion and others, as it stood at the time of the levy, and the legal interest thereon, atsu ch time as the chancellor may order, or quitclaim, by proper deeds of conveyance, to the orator, all right, title and interest they, or either of them, have to the premises in Chester, levied upon by the orator, at the option of the defendants; and we recommend that, costs be taxed against both defendants in this court and in the court of chancery; and farther, that, in case the defendants shall elect to pay the amount of the orator's execution, and shall pay to the clerk for the use of the orator the same, together with costs, at such time as may be ordered by the chancellor, then the orator, on demand, shall relinquish all right and 'title he may have acquired in the premises by virtue of his levy.